# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| RYAN PATTERSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 4:15-CV-1956 NAB |
| ) | |
| ANNE L. PRECYTHE[1], ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Ryan Patterson's ("Patterson") Amended Petition for Writ of Habeas Corpus. [Doc. 3.] Respondent filed a response to the Amended Petition. [Doc. 11.] Petitioner filed a reply. [Doc. 12.] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). [Doc. 4]. For the reasons set forth below, Patterson's Petition for Writ of Habeas Corpus will be denied.

**I.  Background**

The state appellate court found the following facts to be true.[2] Patterson lived with his girlfriend Michelle Lawrence ("Michelle"), who was in the process of divorcing John Lawrence ("John"). John lived with his current girlfriend, Jamie Orman ("Orman"), who was seven months pregnant. Orman also had three children with her ex-husband who were all present on the night of the incident, D.O, J.O, and T.O.

---

[1] During the pendency of the Petition, the warden position became vacant at Potosi Correctional Center where Petitioner is incarcerated. Pursuant to Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts, the Respondent is the state officer who has custody. Therefore, the Clerk of Court is ordered to add Anne L. Precythe, the Director of the Department of Corrections as the Respondent and remove Cindy Griffith's name.

[2] These facts are taken directly from the Missouri Court of Appeals' decision in Patterson's post-conviction appeal. *Patterson v. State*, 467 S.W.3d 395, 399 (Mo. Ct. App. 2015). A state court's determination of a factual issue shall be presumed to be correct. 28 U.S.C. § 2254(e)(1).

Patterson and Michelle plotted to kill John before the divorce was final so that Michelle could obtain the proceeds of John's insurance policies: $250,000 for John's life insurance policy and $150,000 for John's home owner's insurance policy. Patterson enlisted the help of Samuel Hughes ("Ray Ray") on the night of the incident, planning to kill John and then burn his house down.

Patterson and Ray Ray went to John's house and broke in through the back door around 5:00 in the morning. Patterson shot D.O. and Orman, thus resulting in the deaths of both D.O. and Orman, along with the death of Orman's seven month old fetus from lack of oxygen due to Orman's death. The other two children in the home were not injured.

Patterson was later charged with three counts of first-degree murder and convicted by a jury of all three counts of first-degree murder under Mo. Rev. Stat. § 565.020 (2000). Patterson was sentenced to three consecutive terms of life imprisonment without the possibility of parole. Patterson's convictions were affirmed on direct appeal. *State v. Patterson*, 382 S.W.3d 262, 262 (Mo. Ct. App. 2012). Thereafter, Patterson filed a *pro se* Rule 29.15 motion for post-conviction relief which was denied by the motion court and the denial was affirmed on appeal. *Patterson*, 467 S.W.3d at 406.

## II. Standard of Review

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law. Judges must be vigilant and independent in reviewing petitions for the writ, a commitment that entails substantial judicial resources." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). "In general, if a convicted state criminal defendant can show a federal habeas court that his conviction rests upon a violation of the Federal Constitution, he may well obtain a writ of habeas corpus that requires a new trial, a new sentence, or release." *Trevino v. Thaler*, 569 U.S.

413, 421 (2013).  The Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (AEDPA) applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326-29 (1997).  In conducting habeas review pursuant to 28 U.S.C. § 2254, a federal court is limited to deciding whether a claim that was adjudicated on the merits in state court proceedings "(1) resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  A determination of a factual issue made by a state court is presumed to be correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence.  28 US.C. § 2254(e)(1).

For purposes of § 2254(d)(1), the phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).  "In other words, 'clearly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id.* at 71-72.  To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or unreasonably applied. *Buchheit v. Norris*, 459 F.3d 849, 853 (8th Cir. 2006).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of

3

[the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case. *Id.* (citing *Williams*, 529 U.S. at 407-08). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 793 (citing *Williams*, 529 U.S. at 409). "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Evanstad v. Carlson*, 470 F.3d 777, 782 (8th Cir. 2006). A "readiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). AEDPA's highly deferential standard demands that state court decisions be given the benefit of the doubt. *Id.*

## III. Discussion

Patterson presents four claims for review. Patterson first asserts that the trial court erred in admitting an audiotaped statement and transcript into evidence over his objection. Patterson then asserts that trial counsel was ineffective for consenting to a jury being selected from Pemiscot County. Next, Patterson asserts that direct appeal counsel was ineffective for failing to raise a claim on direct appeal regarding a juror who was struck after a challenge based on *Batson v. Kentucky*, 476 U.S. 79 (1986). Finally, Patterson asserts that direct appeal counsel was ineffective for failing to appeal the trial court's decision denying defendant's motion to cross-examine a witness about a polygraph test.

## A. Admission of Audiotaped Statement and Transcript

In his first claim, Patterson asserts that the trial court erred in admitting Exhibits 102 and 103, which were the audiotape and transcript of one of his statements to the police. The record at trial indicates that Patterson was interviewed three times by Sergeant William Cooper ("Sgt. Cooper"). Patterson filed a motion to suppress all of the statements given to the police. [Doc. 11-4 at 107-35.] The trial court denied the motion before trial and the renewed motions during trial. Patterson's appeal to the Missouri appellate courts and this court focuses on the third statement to police.

The Missouri Court of Appeals found the following facts, in the light most favorable to the verdict[3]. Sgt. Cooper spoke with Patterson and Michelle at their apartment around 9:30 a.m. on October 17, 2009 regarding the shooting deaths of Jamie Orman, her unborn child, and her son D.O. in the early hours of the morning. At that time, Patterson claimed he was at home with Michelle all night. Sgt. Cooper returned to Patterson's apartment later that night and told Patterson that he had reason to believe Patterson had not been with Michelle all night. Following a twenty or thirty minute conversation, Patterson agreed to go to the police station with Sgt. Cooper. While in the police car, Sgt. Cooper attempted to read Patterson his *Miranda* rights, though lighting in the car was bad, and Patterson interrupted numerous times.

The following exchange in the car, as outlined by the Missouri Court of Appeals, is the basis of Patterson's request for relief.

> **Sgt. Cooper**: Well … I, I, want you to understand what your rights are.
>
> **Patterson**: Well you ain't read 'em to me yet.

---

[3] These facts are taken directly from the Missouri Court of Appeals' decision in Patterson's direct appeal. [Doc. 11-8 at 2-3.]

5

> **Sgt. Cooper**: Well, I, I'm trying to look through the light here. You have the right to remain silent. Anything you say can be used against you in court. You have the right … uh … you have the right to talk to a lawyer for advice before we ask you any questions, and to have a lawyer with you while you're being questioned. If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time until you talk to a lawyer. Do you understand that?
>
> **Patterson**: Yeah, I'm wondering, do I need a [lawyer]? Green light.
>
> **Sgt. Cooper**: I can't answer that. I, I, I really … I don't know what you know. So …
>
> **Patterson**: Well, could I get a phone call where I can call Michelle and have her lawyer meet me up here? Cause he done handled my case before so …
>
> **Sgt. Cooper**: Well let me finish reading you the, the waiver.
>
> **Patterson**: Makes more sense there cause it's all tricky [expletive, then unintelligible]
>
> **Sgt. Cooper**: I can hardly hear ya.

Upon arriving at the police station, Sgt. Cooper read Patterson his *Miranda* rights once more. Patterson stated he understood his rights, including his right to have an attorney present. Sgt. Cooper interviewed Patterson for about two hours, during which time, Patterson admitted to smoking marijuana, possessing a .44 magnum handgun, and intending to set John's truck on fire. He denied killing anyone and claimed he got rid of the handgun before the murders occurred. This interview was taped and both the audiotape and a transcript were admitted into evidence at trial.

The Missouri Court of Appeals found that, under the circumstances, Sgt. Cooper understandably had a mistaken understanding that Patterson wanted to call his girlfriend while in the police car and that it was not unreasonable for Sgt. Cooper to want to finish reading Patterson his *Miranda* rights before allowing him to call [what he believed he heard to be] his significant other.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The admissibility of evidence is a matter of state law. "A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process." *Bucklew v. Luebbers*, 436 F.3d 1010, 1018 (8th Cir. 2006). "To meet this burden, a habeas petitioner must show that absent the alleged impropriety the verdict probably would have been different." *Skillicorn v. Luebbers*, 475 F.3d 965, 972 (8th Cir. 2007). The privilege against self-incrimination clause of the Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself …." U.S. Const. amend. V. The Fifth Amendment's exception from compulsory self-incrimination is protected by the Fourteenth Amendment against abridgment by the states. *Malloy v. Hogan*, 378 U.S. 1, 6 (1964).

In *Miranda v. Arizona*, the Court provided "concrete constitutional guidelines" for law enforcement agencies and courts that the admissibility in evidence of statements given during a custodial interrogation was dependent upon whether the police provided the suspect with the following four warnings: (1) right to remain silent; (2) anything suspect says can be used against him in a court of law; (3) right to have an attorney present; and (4) if the suspect cannot afford an attorney, one will be appointed for him prior to questioning. *Dickerson v. United States*, 530

U.S. 428, 435 (2000) (citing *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)). "Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influence, is of course, admissible in evidence." *Illinois v. Perkins*, 496 U.S. 292, 297 (1990).

The prosecution cannot use statements "whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. at 444. "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Id.* at 474. The defendant's request to have an attorney present must be clear and unambiguous so that "a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. 452, 459 (1994). "*Miranda* warnings are required for official interrogations only where a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Leviston v. Black*, 843 F.2d 302, 304 (8th Cir. 1988). "Interrogation refers not only to express questioning but also to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Holman v. Kemna*, 212 F.3d 413, 418 (8th Cir. 2000).

The issue before this court is whether the Missouri state court was "unreasonable in applying these governing legal precedents to the facts of this case." *Dormire v. Wilkerson*, 249 F.3d 801, 805 (8th Cir. 2001) (citing *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000)). Based on binding precedent from the Supreme Court and the Eighth Circuit, the Court finds that the Missouri state court's decision regarding the admission of the audiotape and transcript was not unreasonable. In this case, Patterson made two statements regarding counsel: "I am wondering

whether I need a lawyer" and "could I get a phone call where I can call Michelle and have her lawyer meet me up here?" The Missouri Court of Appeals found that Patterson's statement was not an actual, unambiguous, unequivocal request for counsel. The state court affirmed the motion court's credibility finding that Sgt. Cooper did not know Patterson was requesting a lawyer and not just asking to call his girlfriend.

The U.S. Supreme Court has found that a defendant's statement "Maybe I should talk to a lawyer" was not a request for counsel. *Davis*, 512 U.S. at 462. The Eighth Circuit has also held that statements similar to Patterson's statements were not requests for counsel that required the law enforcement officer to cease questioning. *See United States v. Mohr*, 772 F.3d 1143, 1146 (8th Cir. 2014) (defendant's statements of "Should I get a lawyer at this time? … I think I should get one" and "I want my lawyer .. If you want this recorded, I want a lawyer present" were not unambiguous requests for counsel); *United States v. Havlik*, 710 F.3d 818, 821-22 (8th Cir. 2013) (defendant's statements "I don't have a lawyer. I guess I need to get one, don't I?" and "I guess you better get me a lawyer then" were not unambiguous or unequivocal requests for counsel); *Dormire*, 249 F.3d at 804 (defendant's statement, "Could I call my lawyer?" was not a clear statement that he was requesting counsel rather than asking whether he had the right to call one). Based on the binding legal authority as summarized above, Patterson's questions to Sgt. Cooper did not rise to the level of an unequivocal, unambiguous request for counsel. Therefore, the Court will deny relief on this claim.

**B.     Claims Two, Three, and Four – Ineffective Assistance of Counsel**

In his remaining three claims, Patterson alleges ineffective assistance of counsel against both his trial counsel and direct appeal counsel. Patterson first asserts that his trial counsel was ineffective for consenting to a jury being selected from Pemiscot County. Patterson then asserts

9

that his direct appeal counsel was ineffective for (1) failing to raise a *Batson* challenge and (2) failing to appeal the trial court's decision regarding admissibility of a witness's polygraph examination.

The Sixth Amendment guarantees that in all criminal prosecutions the accused has the right to the assistance of counsel for his defense. U.S. Const. amend. VI. The Sixth Amendment's right to counsel has been interpreted to mean "that if the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel, and that judges should strive to maintain proper standards of performance by attorneys who are representing defendants in criminal cases in their courts." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). "The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Strickland v. Washington*, 466 U.S. 668, 685 (1984). "An accused is entitled to be assisted by an attorney, whether retained or appointed who plays the role necessary to ensure that the trial is fair." *Id*. To succeed in a claim "that counsel's assistance was so defective as to require reversal of a conviction," a petitioner must establish (1) that the trial counsel's performance fell below an objective standard of reasonableness and (2) that this deficient performance prejudiced the Petitioner's defense. *Strickland*, 466 U.S. at 687. Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact. *Strickland*, 466 U.S. at 698.

The "performance" component of *Strickland* requires a showing that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. To satisfy this prong, a petitioner must first identify the specific acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Id.* at 690. The

court must then examine the totality of the circumstances in order to determine whether "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. In making this determination, the court should recognize that trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* "Miscues and omissions are inevitable in any case and there is no such thing as a perfect trial." *Medearis v. U.S.*, 469 F.Supp.2d 779, 785 (D.S.D. 2006).

To satisfy the "prejudice" component of *Strickland*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Such "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In determining whether prejudice exists, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695. Further, the court "should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." *Id.* at 694.

"In the interests of finality and federalism, federal habeas courts are constrained by [AEDPA] to exercise only a 'limited and deferential review of underlying state court decisions.'" *Sera v. Norris*, 400 F.3d 538, 542 (8th Cir. 2005). "Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (citing *Cullen v. Pinholster*, 563 U.S. 170) (2011)). "First, under *Strickland*, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is reasonably likely that the result would have been different absent the errors." *Williams*, 695 F.3d at 831 (citing *Strickland*, 466 U.S. at 696)).

"To satisfy Strickland, the likelihood of a different result must be substantial not just conceivable." *Id.* Second, under AEDPA, the Court must give substantial deference to the state court's predictive judgment. *Id.* Therefore, "[s]o long as the state court's decision was not "contrary to" clearly established federal law, the remaining question under the "unreasonable application" clause of § 2254(d) is "whether the state court's determination under the *Strickland* standard is unreasonable, not merely whether it is incorrect." *Id.* at 831 (*citing Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is difficult, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102.

### 1. Trial Counsel

Patterson asserts that trial counsel was ineffective for consenting to a jury being selected from Pemiscot County, because the crime Patterson was convicted of occurred in Cape Girardeau County. In his reply, Patterson states that jurors should have been chosen from a county that "the news did not cover." In his state court appeals brief, Patterson asserted that he was prejudiced by trial counsel's consent to select a jury from Pemiscot County. [Doc. 11-12 at 33.] At a pretrial conference and an evidentiary hearing deposition, Patterson's lead counsel acknowledged that he agreed to have a jury selected from Pemiscot County, because he thought the county was not included in the viewing area of a Cape Girardeau County local television station. *Patterson*, 467 S.W.3d at 404-406. Defense counsel testified that it was a high profile case and they wanted jurors who were not familiar with the facts of the case or been exposed to a lot of media. *Id.* at 405. After consenting to jurors from Pemiscot County, defense counsel later had a discussion with a public defender in Pemiscot County who confirmed that Pemiscot County is located in the viewing area of the Cape Girardeau television station at issue. *Id.* at

405. At an evidentiary hearing deposition, Patterson's attorneys testified that they decided to select the jury from Pemiscot County anyway, because it had the second highest African-American population by percentage of county population in Missouri and due to the racial makeup of the other counties considered as possibilities. *Id.* at 405. Finally, trial counsel also noted that the Cape Girardeau County prosecutor was very popular and they did not want jurors who knew him to be on the jury. *Patterson,* 467 S.W.3d at 405.

During jury selection, the trial court asked the venirepersons if they had access to the Cape Girardeau television station and some answered in the affirmative. [Doc. 11-1 at 319.] Several venirepersons also acknowledged previously hearing about the case. [Doc. 11-1 at 561-66.] The venirepersons who previously heard about the case responded that they could put aside what they had heard and decide the case based only on the evidence presented in court. [Doc. 11-1 at 561-66.] The Missouri Court of Appeals found that Patterson's trial counsel had strategic reasons for selecting jurors from Pemiscot County and not seeking a change to another county. Therefore, the Court of Appeals held that Patterson's counsel did not render ineffective assistance of counsel.

Based on the record below, the Court agrees that Patterson has failed to show ineffective assistance of counsel regarding the use of jurors from Pemiscot County. Strategic choices of trial counsel are entitled to great deference. *Boyd v. Minnesota*, 274 F.3d 497, 502 (8th Cir. 2001) (citing *Strickland*, 466 U.S. at 689)). The Court will not second guess an attorney's trial strategy." *Huls v. Lockhart*, 958 F.2d 212, 214 (8th Cir. 1992). Patterson's attorneys' argument before the trial court and testimony on appeal indicates that they reasonably considered many factors before consenting to using trial jurors from another county. His attorneys considered the racial makeup of Cape Girardeau County and the surrounding counties, the high publicity

13

surrounding the case in Cape Girardeau, and the popularity of the prosecuting attorney. Further, the attorneys questioned the venirepersons from Pemiscot County regarding their familiarity with the case and their ability to decide the case based on the evidence presented in court. The record demonstrates that the tactical decision to use the Pemiscot County jurors was not outside the range of professional competence required under *Strickland*. Therefore, the undersigned finds that Patterson's claims of ineffective assistance of trial counsel for consenting to jurors from Pemiscot County should be denied.

### 2. Direct Appeal Counsel

Next, Patterson presents two claims of ineffective assistance of his direct appeal counsel. He states that his direct appeal counsel failed to raise claims that a juror was struck based on her race and that the trial court erred in prohibiting cross-examination regarding a witness's polygraph examination.

#### a. *Batson* Challenge

Patterson, an African-American, asserts that the state peremptorily struck an African-American juror based on her race, in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). Any type of purposeful discrimination in selection of the jury violates the right to an impartial jury guaranteed under the Sixth Amendment. In *Batson*, the United States Supreme Court recognized that a minority defendant alleging that members of his race have been excluded may make out a *prima facie* case by showing the totality of the circumstances giving rise to a discriminatory purpose. *Batson v. Kentucky*, 476 U.S. at 93-94. If a defendant can make that showing, then the burden shifts to the state to explain the racial exclusion by showing that "permissible racially neutral selection criteria and procedures have produced the monochromatic result." *Id.* at 94 (citing *Alexander v. Louisiana*, 405 U.S. 625, 632 (1972)).

During jury selection, an African-American venireperson, Lillie Wilbourn, informed the court that she had a felony forgery charge "about 30 years ago." [Doc. 11-1 at 648.] She could not remember any information about the charge except that it was a felony and she received five years of probation. [Doc. 11-1 at 648-49, 670-675.] The sheriff was unable to verify that she had a felony conviction after searching under her former and current names. [Doc. 11-1 at 669, 676.] The prosecutor's office contacted Pemiscot County and located a conviction for stealing in 1993. [Doc. 11-1 at 677.] The prosecutor stated that he wanted to preemptively strike Wilbourn and then Patterson's counsel made a *Batson* challenge. The prosecutor stated that he struck her because she admitted under oath that she pled guilty to a felony 30 years ago. Defense counsel responded that there was no evidence of a felony conviction. The prosecutor then stated that even if she did not have a felony conviction, for example, if she had a suspended imposition of sentence, on a felony, he would still strike her as undesirable as a juror. The prosecutor further stated that she also failed to disclose a stealing conviction that resulted in a 183 days sentence in 1993. The trial court then denied the *Batson* challenge and Wilbourn was not seated as a juror. The issue was preserved for appeal.

Patterson's direct appeal counsel did not raise a *Batson* challenge on appeal. At an evidentiary hearing deposition, direct appeal counsel testified that she did not believe that Patterson's *Batson* claim was meritorious for several reasons. *Patterson*, 467 S.W. at 401. She testified that she believed the prosecutor made a race neutral reason for the strike, there was uncertainty about the felony conviction, and it would not be reversible on appeal. *Id.* The Missouri Court of Appeals found that Patterson was unsuccessful in showing that had his appellate counsel raised a *Batson* challenge it would have been successful, and therefore his direct appeal counsel was not ineffective. *Patterson*, 467 S.W.3d at 402.

"It is well established that the Sixth Amendment guarantees the right to effective assistance of counsel on direct appeal." *Cole v. Dormire*, 2011 WL 1258249, at *14 (E.D. Mo. Jan. 20, 2011) (citing *Evitts v. Lucey,* 469 U.S. 387, 396–97 (1985); *Douglas v. California,* 372 U.S. 353, 357–58 (1963)). "The proper standard for evaluating a claim of ineffective assistance of appellate counsel is that set forth in *Strickland*." *Id.* (citations omitted). "Appellate counsel is expected to winnow the issues on appeal to highlight the most meritorious issues and eliminate the sure losers." *Cole*, 2011 WL 1258249, at *14 (citing *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983); *Gee v. Groose*, 110 F.3d 1346, 1352 (8th Cir. 1997); *Pollard v. Delo*, 28 F.3d 887, 889 (8th Cir. 1994)). "An attorney's decision not to raise an unwinnable issue on appeal is an important strategic decision in competent appellate advocacy, and does not constitute ineffective assistance of appellate counsel." *McCord v. Norman*, 2012 WL 1080925, at *16 (E.D. Mo. Mar. 30, 2012) (citations omitted). Thus, "[i]f an issue an appellate attorney failed to raise on appeal is not meritorious, then appellate counsel cannot be considered ineffective for having failed to argue that issue on appeal." *Cole*, 2011 WL 1258249, at *14 (citations omitted).

Patterson has failed to show that counsel's performance was deficient because he could not show that a *Batson* challenge would have been successful had it been raised. Missouri law prohibits jury service by a person who has been convicted of a felony, unless such person has been restored to his civil rights. Mo. Rev. Stat. § 494.425(4). Wilbourn admitted under oath that she had a felony; therefore, it was not unreasonable for Patterson's appellate counsel to determine that the *Batson* challenge was unwinnable on appeal. Because it is not probable that a *Batson* challenge would have been successful, changing the outcome of the case, Patterson has failed to meet both of the standards set forth by *Strickland* for ineffective assistance of appellate counsel. The Court will deny relief on this issue.

### b. Polygraph Test

Finally, Patterson asserts that his direct appeal counsel provided ineffective assistance by failing to raise a claim that the trial court erred when preventing defense counsel's cross-examination of Michelle regarding a polygraph examination. Michelle took a polygraph examination as part of a plea agreement with the prosecution. During defense counsel's cross-examination of Michelle, he requested the trial court's permission to question her about the polygraph examination and its effect on her state of mind and how it might taint her testimony. [Doc. 11-2 at 275-76.] The trial court denied the request, because the polygraph examination could not be properly admitted. [Doc. 11-2 at 277.] Patterson's direct appeal counsel testified in an evidentiary hearing deposition that she did not raise the issue on appeal because "she didn't think it was admissible or that there was an argument to be made." *Patterson*, 467 S.W.3d at 403. The Missouri Court of Appeals found that direct appeal counsel was not ineffective for failing to raise this claim, because it is well established under Missouri law that polygraph examinations are inadmissible and given the substantial evidence against Patterson, there was no reasonable probability that the result of the trial would have been different. *Patterson*, 467 S.W.3d at 403.

Based on the foregoing, the Court finds that this claim should be denied. Polygraph examinations are not admissible evidence under Missouri law. *State v. Hall*, 955 S.W.2d 198, 207 (Mo. 1997) (en banc) (citing *State v. Woods*, 639 S.W.2d 818, 820 (Mo. 1982) (en banc)). "Reasonable appellate strategy requires an attorney to limit the appeal to those issues counsel determines have the highest likelihood of success." *Gee*, 110 F.3d at 1352. Therefore, direct appeal counsel's conduct did not fall below an objective standard of reasonableness. Next, it is

unlikely that if counsel had presented this issue on appeal, Patterson would have prevailed. Therefore, Patterson cannot establish prejudice. The Court will deny relief on this claim.

IV. **Conclusion**

For the reasons set forth above, Patterson's claims for relief are denied. The undersigned finds that all of the state court's findings and conclusions regarding Patterson's claims were not contrary to, nor do they involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Because Patterson has made no showing of a denial of a constitutional right, a certificate of appealability will not be issued in this matter. *See* 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. [Doc 3.]

**IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion by Petitioner for a Certificate of Appealability is **DENIED**.

Dated this 8th day of November, 2018.

    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE